We're here for argument in case number 20-13639, Anthony Wainwright v. Secretary of the Florida Department of Corrections. Ms. Blair, whenever you're ready. Ms. Blair Thank you, and may it please the Court. I'm Catherine Blair here on behalf of Appellant Anthony Floyd Wainwright. I would like to focus my time with you this morning on the first issue in the COA, which is whether Mr. Wainwright is entitled to equitable tolling of his AEDPA statute of limitations. I respectfully submit to you that he is, and with this Court's permission, I would like to make just two very brief preliminary points before I dive into the substance of the issue. First, I would like to be very clear at the outset about what it is that I'm asking this Court to do, and that is to remand Mr. Wainwright's case back to the district court for an evidentiary hearing at which he can present further factual development related to equitable tolling, and specifically to the serious attorney misconduct of his attorney, Joseph Hobson, which caused Mr. Wainwright's petition to be filed five days — pardon me, six days late in 2005. Second, I would like to be very clear that the equitable tolling issue constitutes a separate basis for reopening the Federal proceedings under 60b-6 than does the miscarriage of justice that's discussed in issues 2 and 3 of the COA. So, in other words, Mr. Hobson's conflict of interest, which prevented him from raising Mr. Wainwright's strongest and, indeed, only viable argument for the petition's timeliness through equitable tolling, that constitutes the defect in the integrity of the habeas proceedings. That conflict, then, constitutes extraordinary circumstance and warrants reopening of Mr. Wainwright's judgment now. So, let's say that you did get the hearing and you succeeded in making your equitable tolling argument. At that point, what would your client file? At that point, if he were successful in making the equitable tolling argument below, we would be asking that his habeas proceedings be reopened and his original petition would be able to be reviewed. Sorry, this is not working very well. Remind me what the grounds were in that original petition. Yes, Your Honor. There were several grounds in there. There were, I believe, 11 claims listed. One was an IAC claim related to the guilt phase that centered on trial counsel's handling of late disclosure of DNA evidence and what I would classify as a discovery violation. Trial counsel failed to pursue adequate remedies. There are additional guilt phase issues related to Mr. Wainwright's statements, joint trial of the defendants, several penalty phase issues that are kind of lumped into one IAC. There are several. There is what I would allege to be a due process issue. So, these distinctions, these preliminary distinctions are important because we have kind of an interwoven question here. So, we have the extraordinary circumstances for the purpose of 60B analysis in the form of Hobson's conflict, and that is, that began after he blew Mr. Wainwright's deadline because that prevented him from bringing the strongest argument for equitable tolling, which was his own misconduct. And then underlying that, we have the issue of Mr. Hobson's misconduct and its causal nexus to the untimely filing of Mr. Wainwright's petition. And the district court accepted the conflict as it pertained to 60B as proper. It ruled the district court ruled on the merits of the 60B as it pertained to the equitable tolling issue and then dismissed the rest as an unauthorized second or successor. So, implicit in that is an acceptance that 60B is an appropriate vessel for this claim. In denying... I mean, let's just say we agreed with you on that, that 60B was something that was appropriate to raise this particular claim. It just seemed like, so the district court said that these allegations you've made against the attorney amount to little more than attorney negligence and are kind of the same kinds of things that, you know, we've said in a series of cases that are no good for equitable tolling. Could you address that? Yes, absolutely. The district court did find that there was not merit to the claim because Mr. Hobson had simply been negligent. I do not believe that that is a fair reading on the record. And I do believe that it was an abuse of discretion to make that finding without first holding an evidentiary hearing where, at a minimum, Mr. Hobson could have been questioned about why he did what he did and why the petition was filed timely. Holding that sort of a hearing would have been... What would there be for a hearing? Because we know the petition was not filed timely. What allegations have you made that would rise to the level of attorney abandonment or something like that where you would hold a hearing to find out whether those allegations were true? Oh, yes. So Mr. Hobson did not research. There is no evidence that Mr. Hobson researched. And, in fact, the record supports reading that he did not research the AEDPA deadline despite Mr. Wainwright's directive to do so. So if you will excuse me one moment. And maybe I'm just misunderstanding the standard, but it just seems like, as we've said, you know, attorney negligence and missing the deadline does not get you equitable tolling. What happened here besides attorney negligence and missing the deadline? Yes, and I apologize, Your Honor. I don't think I'm making my point quickly enough. There are several things that Mr. Hobson did which, working in tandem, support misconduct of a different type and character than negligence. So Mr. Hobson held himself out to be an expert in this line of work. That was the basis for Mr. Wainwright retaining him. He later admitted in a 2007 hearing in a different case related to a mishandling of the deadline. I don't know how the Federal habeas deadlines work. He did not. Mr. Wainwright, in 2004, directed him to do research on the AEDPA. He specifically said on October 14th of 04, find out if the AEDPA is being applied to me. This came out in 1996. Mr. Wainwright did not. But that doesn't—that's not an exact request for research on the limitations deadline because AEDPA brought forth all sorts of changes, both procedural and substantive. It did, Your Honor, but I would say Mr. Wainwright has been very clear from the beginning. He wanted to go to federal court. He wanted all avenues preserved for him. That was indeed why Mr. Hobson was retained. Mr. Wainwright was concerned that his counsel at the time, Mr. Glenn Arnold, was not properly preserving issues for Federal relief, which is what led him to seek out a more experienced attorney, which is what Mr. Hobson held himself out to be. He — I do believe that Mr. Wainwright's directives to Mr. Hobson, I want to go to federal court, I want to go to the Eleventh Circuit if necessary, this — he was sending him case law at one point, this could be helpful for my Federal appeals. I don't believe that the onus is on— I'm sorry. I'm sorry to interrupt you. Go ahead and finish. I don't believe that the onus is on Mr. Wainwright, who has a borderline IQ, who is, you know, doing the best he can with the resources he has and who has hired an attorney specifically because he knew he didn't know enough to know when the deadlines were and to tell him. He specifically directed him to do research on the deadline. Here's — I guess this goes back to Judge Brasher's question to some degree. Every prisoner who hires a lawyer to file a Federal habeas petition wants that petition filed and wants that petition filed on a timely basis. And every once in a while, the lawyer makes a mistake, factual or legal, and doesn't file on time. What makes Mr. Wainwright's case different than the run-of-the-mill situation where a lawyer makes a mistake, a horrible mistake, but a mistake? What makes Mr. Wainwright's case different, there are a few things. He — there is not something in the record. So the district court found that Mr. Hobson mistakenly but genuinely believed in the state of the law based solely on what Mr. Hobson argued as arguments inviting the district court to interpret the law a certain way. I don't think that's not accurate, though, because the district court relied on communications that were in the record between Mr. Wainwright and Mr. Hobson. So it's not just the arguments that Mr. Hobson made for equitable tolling when he was operating under a conflict of interest. You had a back-and-forth discussion between Mr. Wainwright and Mr. Hobson about the preparation, the working on, and the filing of the habeas petition. Yes, Your Honor, they did rely on communications, but I would respectfully disagree with that characterization of what the record reflects. So the record does reflect that Mr. Hobson, after blowing the deadline, does make representations, affirmative representations. The petition is timely. However, before the deadline, what you see are pattern of representations that he is going to be working on it, going to be working on it, going to be working on it. But he was working on it. I do not believe the evidence supports that. Well, let me give you my perspective on that first Rule 60B issue. There is an interpretation of the record which might support your position. If you view the facts in the way that you assert them, maybe. But the district court made factual findings about, for example, Mr. Hobson not lying to Mr. Wainwright about having a genuine belief about how the, although mistaken, of course, about how the AEDPA limitations period applied. So how do you get around the clear error standard to overturn those factual findings? I believe that it was an abuse of discretion to make those factual findings without first holding an evidentiary hearing. And Mr. Wainwright's case reminds me in many ways of Paul Brown's case from 2018, where we have elements of all of these different issues in one situation. So we have Mr. Hobson, who is doing work in the state court. He is absolutely doing work in the state court, as was John Bonacorsi and Paul Brown's case. But he is not doing work on the federal side. He sends communications in the coming months before the deadline saying, I will then turn to. Practically speaking, our attention will now turn to. There is nothing showing he actually does turn to it. And, in fact, Mr. Hobson's own agenda from March 16th of 2005 indicates he had not yet ascertained the deadline. It's number 12 on a lengthy to-do list. He sends these communications. I do not think that's a fair reading of the record. Once he is also reassuring Mr. Wainwright that he will be filing, so Mr. Wainwright believes that representation, but it is not borne out. And I would say that Mr. Hobson. But he did file. I'm sorry. Well, that's what I was about to ask. Doesn't the fact that he did file show that he had been working on it and that he, factually speaking, made a mistake about the deadline for whatever reason? I do not think the record supports that without great inferential leaps. And I think it was an abuse of discretion to find that without holding an evidentiary hearing. Where's the inference? Because he did file a petition, right? There's no dispute about that. And so the petition had to be worked on in order to be filed, right? It was in a shambles. It was, in many areas, incoherent. The typographical errors alone were something that nobody appears to have ever looked over. It did not cite federal law. It did not cite the EDPA. It did not engage with the Florida Supreme Court's underlying determination. It did not make any intention or representation that a memorandum of law would file. It was not a pleading that was put together, even in a couple of weeks, if he was working on it. This is a pleading that was done at the very last minute. The record reflects this is something that was heavily copied and pasted. What was there was, I hate to sound like a broken record, but nearly incoherent and does not suggest that he had been working on it. It does not even suggest that he had been working on it since March 16th, let alone the several months that he had been writing to Mr. Wainwright. His letters also bear out, I want to come see you. There are several issues we need to discuss related to the preparation of your federal habeas petition. He does not come out. He does not present those. He does not go to see Mr. Wainwright at the time that he says he is going to. And Mr. Hobson's conduct in when he filed and the state that he filed in is irrational when compared to the dates that he alleged in, I wouldn't even say factually alleged, but he proffered to the court as governing timeliness. So, for example, the public records request, he invited the court to interpret the law to say that the public record request filing is what stopped the Edpa clock rather than the filing of the 3851. Had he genuinely believed that, and his pleading to that effect is unclear. He uses two dates. At one point he says he filed in October, or that prior counsel had filed in October of 98. Then he says December of 98. It was October of 98, although not the date that Mr. Hobson said it was on. But even going by that benchmark, he would have had another approximately six months left on his habeas clock if he was working under that assumption. If this was a mistaken but genuine belief in the law, there is absolutely no explanation for the rush job pleading. So, I don't want to put words in your mouth, and you don't say this expressly in your brief, but I think this is where you're headed. You're saying that at some point right before or right after the expiration of the actual Edpa deadline, he figured out he had blown it and then rushed to file something as quickly as he could. I think that anything I would say on that point is speculation and that is something we need to know from Hobson. No, factually, you're absolutely right, and I'm not asking you for a factual statement because you're a lawyer outside of what happened. But your legal theory has to be that, that if he wasn't working on it at the time that he told Mr. Wainwright that he was, he just rushed to get it finished because at some point he figured out or somebody told him, hey, you're about to blow the deadline or you did blow the deadline, and then he had to get something filed as quickly as possible. That has to be the theory, right? Something happened, yes. That is my theory. Something happened. Okay, can we turn to the second issue, the second big issue? Yes, Your Honor. So the second issue is, or the second and third combined, let's assume that Wiggins in 2013 allows an actual innocence claim to be asserted as a miscarriage of justice in a Rule 60b-6 motion. So take that as a given for purposes of my question. How has Mr. Wainwright shown actual innocence here? He has presented the report of Candy Zuleger as well as the statement from Richard Hamilton. I would submit that our briefs do, they reflect the level of factual development that we have been able to conduct on that issue, so I would rely on the briefing for what he has shown. But again, I would remind this Court that these are alternative bases for 60b-6 relief, and I think the much cleaner and simpler way to resolve this case at this point is to remand for an evidentiary hearing related to the equitable tolling. That would, you know, if successful, reopen the proceedings. It would allow Mr. Wainwright to present evidence of Mr. Hobson's misconduct. It would allow the District Court to find out from Mr. Hobson why he had done what he done, which he, pardon me, why he had done what he did, which this Court has repeatedly recognized it is a very important factual question when dealing with equitable tolling issues. So in Brown, in Thomas, which kind of came in an opposite posture, this Court also remanded for further fact-finding on that. In Downs, in Holland itself, I think that that is very necessary in order to make those factual findings. Mr. Wainwright could also, you know, make any additional factual proffers related to, you know, Mr. Hobson's conduct. But I think it is very important to hear from Mr. Hobson himself. He has never been under oath. He has never made a representation about why he filed when he filed other than— Why does that—and I'm really having trouble with that. Why does that matter? Why does his reasoning in failing to file timely, why does that make a difference? We know he didn't file timely. We know he filed six days too late or something like that. If he said, you know what, the reason—let's just assume his testimony was what Judge Jordan suggested. His reasoning was like, you know what, I wasn't working on this. I blew the deadline and I rushed and I filed this late, seven days late. Would that satisfy our equitable tolling precedence? I think the reasoning— in answer to your question, I think whether it would satisfy the equitable tolling precedent would depend fully on what he said and kind of the circumstances if he wasn't working. If he said, you know, I wasn't working on it, I wasn't, you know, paying attention to it, I think that very well constitutes constructive abandonment. But I think the reason that it's so important to hear from Hobson himself— Really, I mean, and so really, that—so if he just said, you know what, I forgot about it, I wasn't paying attention to it, that's sufficient to say abandonment? Your Honor, I'm hesitant to give a very bright line principle here because I think the determination of where his conduct would fall on the continuum if we have negligence on one end and we have bad faith, intentional deceit on the other. Somewhere in line, this Court's precedent in Cadet and in Thomas shows that there is kind of a spectrum of attorney conduct. And I can't tell you based on one comment he might make necessarily where to draw that line, but it's a holistic inquiry, and this Court did even recognize that recently in Brown. And so I think putting him on the stand, hearing what he has to say, you know, it could be that after what he has to say, the District Court would find against us again. It could also be depending on what he has to say, we could receive equitable tolling. But the point is, Mr. Wainwright has made a factual proffer that is not conclusively refuted by the record extant to show that Mr. Hobson's conduct, taken as true and taken in the light most favorable to him and not refuted by the record as we have it, rose to something that was misconduct. And what we term that constructive abandonment, I think seems the most natural fit for me. It reminds me very much of what John Bonacorsi, what happened with John Bonacorsi in Mr. Brown's case. He was working on the Federal case, but he constructively abandoned Mr. Brown related to the Federal. He had virtually no Federal experience as it turns out Mr. Hobson also did. Mary Catherine Bonner in that case had made some representations about timeliness that you know, Mr. Wainwright has proffered, Mr. Hobson made to him. There are, and about what was working, what was being worked on, there, and I apologize, also Mr. Anderson made representations about timeliness. My apologies. Those, those I would call constructive abandonment, but do not need to be necessarily given a specific term to fall under the umbrella of the type of egregious or serious attorney misconduct that constitutes an extraordinary circumstance to warrant equitable tolling. And I do not think we can get to that point. We submit, we cannot get to that point without hearing from Hobson under oath. Thank you very much. You have all your time left for rebuttal. Thank you very much. Thank you. May it please the Court. Assistant Attorney General Charmaine Millsaps representing the Secretary. I'd like to start with Issue 2 because it's a jurisdictional issue. There are questions that have been answered by this Court before we get to equitable tolling. So how is that? I thought the Issue 2 jurisdictional issue was just about their attempt to file basically a successive petition under actual innocence. Equitable tolling is irrelevant to that, right? Right. I'm saying we cannot get to the equitable tolling. To get to equitable tolling, you're going to have to reopen. The District Court was correct in finding this successive. Only successive in part. Your argument is that the first part of the motion, the first part of the motion argued Mr. Hobson acted under a conflict of interest. He was the attorney who blew the deadline. He couldn't have advocated in the best possible way about his own ineffectiveness. That's a defect in the proceeding. Here's the evidence he should have presented. Here are the arguments he should have presented. Reopen and grant me equitable tolling. You don't think that's a proper Rule 60B motion? In a Federal habeas case where the issue of equitable tolling has been already litigated by this Court? Your Honor, you would be reopening the equitable in Federal habeas. My problem with using 60B that way is, in effect, you're underwriting the AEDPA. We don't do things twice in this. And using 60B... But the Supreme Court has sanctioned using 60B in a Capital Habeas case. Now, of course, that case... Reversed us. Yeah. Now, that case didn't involve the same circumstances as this. And it's one thing to say that the Rule 60B motion should have been denied. It's quite another thing to say that it was improperly filed and jurisdictionally defective. If that's your argument, you and I are on a very different page. No, it's not. I'm starting with the new claims that were raised in the motion. Okay. Well, we want to start with the Rule 60B. Okay. We'll start with 60B. And then we can talk about the actual innocence and the new claims that that tried to bring into the proceeding. And there's a threshold issue regarding the 60B. And that's its timeliness. What they're really doing is saying Christensen v. Roper should be applied retroactively to this case. The reason Hobson stayed on the case was that Christensen v. Roper, whether the Supreme Court's conflict jurisdiction applied to its statutory right to counsel was an open question, a question answered in Christensen v. Roper. But it was answered in 2015 and this case was litigated up here in 2008, 2000, almost a decade earlier. It was several years earlier. Okay. So first you're going to have to decide whether the 60B-6 is timely or not. Well, if we have to decide that, that seems like we'd have to remand to the district court to address that, right? Because the district court didn't address that and said basically if the Eleventh Circuit wants me to address it, I'm happy to. You can remand it. That's not exactly what the district court said, but something like that. Why would we address the timeliness of the 60B motion ourselves? Because the United States Supreme Court has urged circuit courts and complimented those that do. They want you to enforce, especially in habeas cases, timeliness issues regarding 60B. But that says nothing about whether we should do it or whether the district court should do it in the first instance. And that argument was made to the district court and you can affirm on alternative grounds. But the COA was not granted on that issue and the reason it wasn't granted on that issue was because the district court didn't pass upon it. That doesn't mean you can't rely upon it as an alternative ground for affirmance. I'm not saying that. I'm just saying we have the discretion to not address it because the district court didn't address it. If you want to really press on that, you may get a remand. Well, my argument is you should not. You should address the timeliness. Let me ask you this, just as a practical question. The timeliness for a 60B motion is within a reasonable time and it seems like we've said that district courts kind of like reasonable time depends on the facts and circumstances and things of that nature. That just seems like a very odd thing for us to address as a court of appeals without a district court ruling on what a reasonable time would be in light of the facts and circumstances. And, Your Honor, in the normal 60B, it would be. Here's why it's unusual here. They want to take a case, Christensen v. Roper, and apply it years after the fact. Christensen v. Roper was decided in 2015 and they wanted to file this motion in 2009. Normally, all the circumstances and all that matter. My argument regarding 60B when you're relying on a new case is it has to be filed within 90 days of that new case. Mine's not dependent. My position is not dependent. Now, I'm not. No other 60B has to be done like that. Ms. Millsaps, no court in the country has held as a hard and fast matter that you get 90 days after a new decision. Your Honor, I have a whole string side of cases where some dates like eight months. In Chad v. Ryan, the United States Supreme Court itself dealing with almost the functional, the appellate functional equivalent said three and a half months was dilatory. Well, here's your problem, I think. In Buck v. Allen, the Supreme Court took a case which was filed a year or two the underlined Rule 60B was filed a year or two after Trevino and Martinez got decided. And the Supreme Court not only took that case, but reversed on the merits and granted habeas relief. So, it's very hard. The standard is fluid and it's a reasonable time and that time can differ depending on circumstances, but if you're asking us to draw a hard and fast 90-day period, you've lost me. Only in the unique case of when you are trying when you're holding up a case and saying this case should apply. You should not be able to file a 60B years after that case. It's only in those unique circumstances when you're relying on a new development. But it's one thing to say that you can't wait for years. It's quite another thing to say that the deadline is 90 days. Well, I'm only getting that from Chad v. Ryan. If you want to be, but Your Honor, I gave you several cases where they said months, eight months, six months, where almost every court in the United States Supreme Court has encouraged circuit courts to enforce the reasonable time limit on 60Bs, especially in the context of the AEDPA. Now, if you're saying that they would use it, that it would be just on Christensen v. Roper, I heard that they almost, maybe I misunderstood the oral argument, they almost seem to be abandoning the actual innocence part of this. She rested on her brief. Okay. Well, but the argument they seem to be making up here is focused on, let me put it that way, it's focused on Christensen v. Roper and the fact that the first round of litigation was handled by an attorney who had, under the current law, what we would consider a conflict of interest, and so another attorney should have been appointed to litigate the equitable tolling. That's what I understand that. And that is under current law in Christensen v. Roper, I'm sure this Court would do just that. But we are now going back over a decade in the case and redoing, in effect, the first appeal. And it's too late. If you don't want to say 90 days, fine, but several years. First of all, let me explain how many different ways this is untimely, and I won't pick an exact date, but Christensen v. Roper came out in 2015. The capital habeas unit was established in 2015. Hobson had withdrawn, not in the federal court, but the attorney at issue, whose conduct is at issue, had withdrawn in 2013 in state court, and a new attorney had been appointed to him. Remember, equitable tolling also has a diligence problem. There were all kinds of different times at which... Still being represented by the same attorney who's under the conflict of interest. How do you expect that lawyer can say, oh, Christensen has come out, let me tell you in how many ways I've sinned? No, no, I don't mean it that way. What did you expect to happen? I mean all the opportunities he had to get a new counsel. I'm telling you all the different opportunities and forks in the road to get a new counsel. So he had, so the obligation was on him, although he was represented by counsel, to then ask the court to appoint a new counsel because of Christensen. Which is how really Florida's post-conviction system works. Usually your state post-conviction counsel is under both a statutory and a contractual obligation to become federal counsel. He got a new state post-conviction counsel in 2014. He could have asked... For what reason? Why did he get a new post-conviction counsel? Because Hobson withdrew. Okay. Well, he didn't withdraw in the Federal Habeas Clause. No, he didn't. But I'm saying he could have done that under our statute because that's the more normal. He was given new state post-conviction counsel. He could have also gone to Federal court and said my attorney has withdrawn. My attorney who was representing me is 3599 counsel, has now withdrawn in State court, so please give me a new, a whole other attorney. He could have told the Federal District Court that his attorney had withdrawn in State court. He could have used Christian v. Roper in that pleading to appoint new counsel. And all that could have happened years before this. Moreover, once Chu was appointed, was created, they could have come in in 2016 and said, made a motion to be appointed. They could have... It took them years to even get to the motion to appoint. There's just delay after delay after delay after delay, all sorts of ways. How many cases did the Chu have before it when it had to pick and choose which ones to file in first? Do we know that from the record? I know when they were created. I don't know. That's a matter for, that's a matter if necessary, I think. I speak only for myself. For development in the District Court, if you're really pressing on this limitation of this timeliness issue... If you want to spend all your time on that, you can go ahead. Are there a lot of other cases that a decision on timeliness would affect? Are you looking for this rule because you think it's important for other cases? I guess I'm having a hard time. Obviously, I know when we have a conference, we don't know how the case will come out, but I think you probably heard some skepticism about the ultimate grounds for equitable relief, even if we allow the petition. I guess I'm having a hard time understanding why you'd rather press on making a substantial rule that perhaps is best made by the District Court in the first instance, rather than looking at the facts of whether this attorney's conduct was more than negligent. I will move on to that. Absolutely. Remember what the standard here is for the denial of a 60B6 under this Court's case of Cano v. Baker. The District Court denied this, and to be wrong, this Court has said many times things like he has a heavy burden under that, and there must be a compelling reason. It's not just a matter of this Court looking at whether it would grant a 60B or not, but there must be a compelling reason. They haven't pointed out any of the typical things, such as an error in law, or they certainly haven't met the standard for clearly erroneous fact-finding. If you want to do this as a straight appeal of a 60B6, the standard of review is very deferential to the trial court under this Court's case law. Going back to Cano v. Baker, that's your lead case in this area. You can't really resolve the issue of equitable tolling without an evidentiary hearing at which Mr. Hobson testifies. Can you respond to that? Yes. Now, it's rather ironic my comeback, but in one way, because he was the attorney, he did tell us two reasons why he missed the deadline, just as part of his representation. One of them had to do with the mismailing. He had filed a motion for re-hearing in the Florida Supreme Court, which would have kept the case tolling for federal habeas purposes, and he was with an old firm. He changed his address on the Florida Supreme Court website, but he did not change his address to the Florida Supreme Court. So the Florida Supreme Court sent the denial of the re-hearing to his old wrong address instead of his new correct address, because he had oops, forgotten to give them a change of address. So literally, it was forget to file a piece of paper. That was part of his reasoning down below, and then the other part was confusion in the law. But that ground was factually incorrect, right? He didn't have a basis for that. So the district court found back in 2005 or 2006, and we affirmed. Yeah, well, didn't have a basis for equitable tolling on that ground. Right, there's no basis for that, but in terms of whether that's negligence or abandonment, after it's clearly negligence, because it's just literally Alito gives that as an example in his concurring opinion in Holland that then becomes the test in Maples versus he gives an example of prototypical negligence as an attorney mailing the piece of paper to the wrong court and therefore missing the deadline. So I'm using that. They say if the district court held an evidentiary hearing that it's possible that the district court could find that all of that was basically a lie and that actually what happened is the attorney was just kind of never working on it and then sort of realized close to the deadline or kind of around the deadline. Oh no, I've got to file this. I'm going to miss the deadline. And then just throws something together and files it six days late. One question is do you think that is something that's sufficiently alleged that the district court could find that that's what happened? And then the other question I have is let's just say that that's what the district court said happened. Isn't that still just attorney negligence? It's all just attorney negligence. None of this I'm working on and I'm working on it is something let's say I would think most lawyers when they tell their client they're working on it that can also include mean to get to it soon. You know, busy and I have no idea whether he was busy or not. But that's just negligence too. That's not a promise that it will be filed on time. And even an attorney that makes a promise it will be filed on time, what they're really saying is here's what I think the correct calculations are and I'm going to file it by that date. But if they make wrong calculations in that, they're going to file it late too. All of that is just attorney negligence. If a lawyer knows the right deadline but lies to his client about what the deadline is, is that more than negligence, warranting, equitable total? If he knows the correct deadline and files it late anyway, yes, Your Honor. That comes close to not abandonment. There's absolutely no abandonment here, but it comes close to this court's bad faith. That's what she's arguing. That's what she's arguing, the evidence she hopes will show in an evidentiary hearing. Yes, that could amount to bad faith if he knew the timeline, if he knew the correct and didn't do it. But then that raises a whole other issue, which is what if the attorney is doing it on purpose to, which is the Thomas case, to litigate equitable here, won't even get, this will be denied so fast, it would be better for me to do equitable tolling. That would become a problem even under the bad faith if it was intentional in that sense. Yes, that could amount to bad faith. Would it make it worse? Would it be? Would it be? A lawyer is setting up an untimely filing in a knowing way because he or she wants an issue of equitable tolling decided. Isn't that even worse? If you know the deadline is January 1st, but you say to yourself, you know, I've surveyed the federal law, and there's this really interesting issue of equitable tolling, and if I miss the deadline, I can raise this issue of equitable tolling, and I can help decide this issue for the country, or if not the country, for the circuit. So I'm going to miss the You don't think that's problematic? Well, it's problematic, but it's certainly not, A, it's certainly not abandonment, but going to the bad faith part. Wait, wait, wait. You don't think that's abandonment? If the lawyer knows the deadline is January 1st, he or she can easily file by January 1st, but they intentionally, and they tell the client, I know what the deadline is, I'll file on time, and then intentionally blow the deadline to set up an interesting legal issue? And certainly I'm not advocating lying to your client, but Your Honor, that sounds to me like a litigation strategy more than it's bad faith in that you lied to your client. What if he's silent? How can that be a litigation? I don't want to get too far off. What if he's right? What if he's right that that's the better issue? All equitable tolling gets you is a merit determination on the habeas petition. It doesn't put you in a better position. It does if you get to keep litigating like the defendant in this case has managed to do. We're talking about reopening a case that Because of delay, you mean? Yes. In a capital case, that's what matters, the delay. A delay takes your death sentence and turns it, in this court's word, it commutes to death sentence. Now, you said that in the context of stays, to a life sentence, and that's exactly what it does. Many circuit courts have recognized that delay is the name of the game. That's a direct quote from federal habeas in capital cases. So, yes. Let's just get back to what happened here. So, the district court said that the claim for equitable tolling is basically based on the idea that the attorney lied when the attorney said, I'm working on it, and the attorney wasn't really working on it. That's what the district court said that their claim for equitable tolling was based on, and I think that's accurate. I think that's what their claim is based on. If an attorney, so let's just say that's what happened. The attorney lied when he said he was working on it. He never was working on it. You know, the day comes and goes, he throws something together and files it. Is that attorney negligence, or is that abandonment? That's still negligence, Your Honor, especially we're characterizing things. A lot of people say, I'm working on it, meaning I'll get to it, but even if you Well, yeah, let's just assume that he's, I mean, he's just not a good lawyer, or he's incompetent, or he doesn't communicate well, whatever reason he's saying it, that he said, I'm working on it, but he was never working on it. What's your best argument for that not being equitable tolling? Because that's not close to abandonment, Your Honor, especially when you're, after he, he not only filed this federal habeas, Hobson not only filed this federal habeas, but then he filed a, the claim of the Hamilton, the co-defendant, he then, and tried to get the he was doing it in both lengths. He was working both in state court and federal court. So he, after he filed the federal habeas, he filed a successive post-conviction motion in state court and asked for this, asked for the federal habeas petition to be stayed to litigate that. So he not only, not only did he file the petition, which remember what, abandonment really came from the case of Maples, and that's when the, that's when the attorneys not just didn't give their new addresses. What they did was they took, and the court was at pains to do this, they both took new jobs that did not, both of the attorneys there, oh, and they were representing it at the time in state court. They it was an Alabama case. I remember it well. Yeah, so. Okay, but they didn't, they weren't allowed to work. So the abandonment literally. They were the only one to Colorado. Yeah, they left. So that's the standard for attorney abandonment is that your attorney has to basically just leave you and. High and dry. Yeah, what's, so besides Maples, like what's a case that you think stands for that proposition in our circuit or another circuit when it talks about attorney negligence versus abandonment? Well, Your Honor, I mean, I always look to Maples. I don't know what I'll look for an 11th Circuit case that does it more, but what they really had done is they had. I'll interrupt you for a second. Our case in Cadet says that, or Cadet, however you pronounce it, says that it's more than just pure abandonment, right? It has to be really high, but it can be, it can be bad faith, for example. It can be some other things that come close, but don't necessarily amount to abandonment. Yes. So abandonment is not the only standard. No, under this Court's case law, Cadets won, but really it had that from Holland even. Holland came from this Court, so yes, you can have bad faith under this Court, and the State's not disputing that as well. There are, but I'm just trying to get straight that when you're doing this in both Courts, that that's clearly not abandonment. So it's not abandonment. And it's not bad faith either. Right. So let's, so the other thing that we've said is we've said, so we've always said, you know, garden variety and herding negligence is not equitable tolling, but we've said even gross negligence or recklessness is not an extraordinary circumstance. So what's the difference between, I guess, does this, does what they're alleging here rise above gross negligence or recklessness on the part of the attorney? No, Your Honor, it doesn't. I think it has, it would have to do, you would have to sticking with more of the bad faith, it's clearly not abandonment. Sticking to more of the bad faith, you would have to basically have somebody directly lie to their client. I filed it yesterday. Mm-hmm. Describing not something that their future events, I don't even like that because a lot of people say that. I filed it. Tells his client I filed it. Client is, oh good, it's done. It's on time. And he didn't file it. That, to me, is an example because you're directly lying to your client about something that is not some future event that you mean to get to. You told your client you were going to file it. It has to be a lie. You had filed it and you hadn't. It has to be a lie about something that happened that didn't actually happen. Yes, you could do that too. I'm not trying to limit the lies. I'm giving you an example. I have the same problem that Justice Alito has with gross negligence. He says it's just a fancy adjective on front of negligence. It's just bad negligence. But a lie that would also be, there'd be I'm sure you could give me several hypos. I guess it would have to be something that made the client feel that he was not abandoned even though he effectively was abandoned. Or do you think it's something different than that? Could you give me a hypo where a client would feel abandoned? Well, no, would not feel abandoned if his lawyer said I filed this, right? And they don't say I filed this yesterday, but yes, I filed your federal habeas petition. And then the petitioner thinks, okay, great, he's filed it. I guess we'll see how this progresses. When really it hadn't been filed. I think you said that that would qualify as more than negligence and actually as something akin to abandonment, right? Yes, and even on that, that would also go, remember when you represented really the extraordinary circumstances is really looks at the lawyer. The diligence looks at the petitioner himself. And could he very much use what you were saying? He told me, I didn't even, why would I bother to go look at the docket? It's not like I thought my lawyer was going to lie to me. So he could use everything the not feeling abandoned to establish his diligence. Let's say there's a delay before he finds out. I would think he'd be able to use that lie, not just to establish the extraordinary circumstances, but it would impact the diligence prong that he would have to say. I imagine that Mr. Wainwright's counsel would say effectively that's what happened here, except the lie was, I'm not saying I'm advocating either position, but the lie was not backwards looking, but it was forward looking. I'm going to file this. And so that's why you don't have to worry. I'm your lawyer. You're in good hands or whatever. Whereas really this attorney wasn't going to file it. And maybe we need an evidentiary hearing to confirm that, to confirm that he never had any plans to do it on time or anything like that. How would you say that's different than what you've hypothesized? Well, first, what I understand their allegation is is, Your Honor, my time has expired. May I answer the question? Please go right ahead and finish answering the question. What I understand their allegation is, is he said I'm working on it. Not even I'm going to file it, but I'm working on it. Especially, Your Honor, in those days you really did, now you added a lot of AEDPA law. But for purposes of exhaustion, you were usually most attorneys were taking the body of their state pleading and turning it into a federal habeas petition because if you weren't doing that, your claims would not have been exhausted. So that there was a lot of overlap. You would necessarily add Supreme Court cases and AEDPA to it, but the claims would look like the claims that you had filed in post-conviction. Alright, thank you very much. Thank you. Your Honors, I'd just like to make a few additional points. Regarding the timeliness of the 6dB, as you well know, the district court did not pass on that issue. And they specifically, the district court specifically in denying the motion to alter or amend said that if this court had, if additional findings related to the timeliness of the 6dB would be helpful to the 11th circuit, that the district court is prepared to make those findings. So to the extent that there are any concerns about that, I again would believe that this is a matter for remand. The onus cannot be on Mr. Wainwright to be the one litigating counsel's conflict when counsel is laboring under a conflict. Mr. Wainwright had conflicted counsel until June of 2018, although I will note that Mr. Wainwright in January of 2008 did file a pro se motion in this court asking that Hobson be discharged. And he was denied. I'm happy to supplement the record if you would like, but it is also available under the prior proceedings in this case, which is case number 06-13453. Also, Hobson's misrepresentations to this court related to the public records request tolling, what the district court has termed a sincere but mistaken understanding of the law. Those representations, number one, they were not made under oath. Number two, they were made at a time when he had a conflict. He was conflicted from making any admissions that would call his own conduct into question, so nobody has had a chance to challenge him on those. And that is another reason that I believe his testimony is very necessary at an evidentiary hearing. Doesn't that just take him completely out of the equitable tolling equation and then forgetting the arguments he made, and now we decide whether or not the new arguments that are being asserted warrant equitable tolling? In other words, his testimony takes him and the arguments he made on equitable tolling the first time out of the equation. That's the defect in the proceeding that you're asserting, right? Yes. And so if you are right, and the district court agreed with you on this point that he labored under a conflict, and so the question now is, let me look at the arguments Mr. Wainwright is now presenting for equitable tolling, and let's see if those arguments suffice for equitable tolling. Isn't that the way the analysis proceeds? I think regardless of what, I mean, the district court did engage with the arguments that Mr. Hobson made. It is my position that those were under a conflict, but they are also, either way that you look at it, they're not supported by his actual actions. And Mr. Wainwright has proffered that Mr. Hobson did commit attorney misconduct. He said he had experience that he did not have, and that is not only Mr. Wainwright's allegation. We have the Declaration of Honorita Magri, Mr. Wainwright's former spouse, that goes to that effect. He misled Mr. Hobson. Actually, I'm having trouble. I'm glad you mentioned that, because I'm having trouble figuring out how his misrepresentations about his experience match to equitable tolling, right? So he says, I'm a great lawyer. I'm a, you know, I've got experience in capital cases, and let's just assume he doesn't have that. What's the connection between that and equitable tolling? Had Mr. Hobson not made those representations, he would not have been hired. Mr. Wainwright What's the connection between that and equitable tolling? His hiring and then his misconduct subject to, you know, subsequent to that hiring and Mr. Wainwright's belief that he had hired somebody who knew what he was doing caused the untimely filing. Those, all of these things are connected. I mean, you can, I'm not trying to set up a straw man here, but you could say that, you could extend that a lot of ways, right? What if Mr. Hobson said, you know, I'm a big Gators fan, and that made a big difference to Mr. Wainwright, and actually, you know, he chaired for another team. Like, how far can we take statements that he made in seeking his original representation all the way up to equitable tolling? Here, and again, I can't say where I would draw the line on what the misrep, but it goes to the causality. As it relates to equitable tolling, the misrepresentation goes to the causation nexus. Mr. Wainwright, the representations, Mr. Hobson For the initial hiring, or for the problem that occurred that caused the, you know, the missed deadline? It's both. I think the more insidious portion of it, the first part, obviously, if Mr. Wainwright had known Mr. Hobson's actual experience level, he would not have hired him. But, having hired him and believing him to be an expert and taking his entire circumstances into account, he's incarcerated, he is of lower cognitive functioning, he believes because this is an experienced person, you know, he thinks, in this field, he believes the assertions that when he says he's working on something he has every reason to believe that the petition will be timely. Had he not had that ill-gotten trust, things could have worked out differently. Here's a question I have about that. I get it. You should be able to rely on your attorney. But we've said that attorney negligence and even gross negligence and even recklessness is not something that gets you equitable tolling. So, in any case, someone who is in Wainwright's position should be able to say I hired an attorney, the attorney was supposed to figure out the deadline and file it, and I thought the attorney was going to do that. If we have to have an evidentiary hearing here, wouldn't we have to have an evidentiary hearing in every single equitable tolling case where the deadline was missed? I don't think that a decision to grant an evidentiary hearing on Mr. Wainwright's equitable tolling would open the doors for every equitable tolling inquiry. Mr. Hobson specifically said he was working on things when he was not working on them. Is that the main difference? Because I'm just trying to figure out whenever there's a deadline missed, there's got to be some explanation for why you missed the deadline, right? It was either attorney negligence, it was gross negligence, it was abandonment, it was someone was defrauded, I mean, whatever. Someone was bad faith, whatever. Why wouldn't you have to have a hearing just whenever you just say the deadline was missed, my attorney told me he was working on it, I trusted my attorney to work on it, but he missed the deadline. Why isn't that enough to get you a hearing? Equitable tolling is all about looking at a case-by-case basis and the circumstances as they are in a particular case, and so I don't think Mr. Wainwright's case needs to have that immediate bearing on every other case. In his case, Mr. Hobson said he was working on something when he wasn't. In his case, he said, look at the AEDPA. Mr. Hobson didn't. In his case, Mr. Hobson filed an almost incomprehensible pleading after the deadline. In his case, he makes these false reassurances. It was constructive abandonment, which was, in Mr. Wainwright's situation, almost worse than having been physically abandoned, because Mr. Wainwright did not know what was happening, so he did not know that he was being misled in this way. So I don't know where to draw the line on who all gets an evidentiary hearing. Do you have any case for constructive abandonment that we should look at? So, I mean, you know, we talked about Maples. What's sort of your best case for this theory of, well, I wasn't really abandoned, but I was kind of constructively abandoned? Yes. And is it all right if I go over my time? I see that I'm over. Yes, of course. I would point this case to Brown, Paul Brown. In 2018, there was a layered inquiry done on, you know, there were three lawyers that handled the case. John Bonacorsi initially blew the deadline. Effective abandonment, I believe, was the term of art that this court used at one point when remanding for an evidentiary hearing. Mr. Anderson, who was the third attorney who had him when the deadline had run, he was not communicating with him. So I would point you to Paul Brown. I'm sorry, what's the citation for Brown? Yes, I apologize, Your Honor. That is... Published? It is, yes. I just want to make sure I understood that you were talking about an unpublished case. Okay. I was, and what I will say, though, is in making its findings, it does draw on Holland and Cadet. It does draw on other findings, and that reporter is 750 Fed Appendix 915, and it's from 2018. Thank you. Thank you. Great. Thank you both very much. We're in recess. All rise.